1790 from the Western District of Missouri, Spire Missouri v. USIC Locating Services. I need to get counsel up on my screen. There's Mr. McCarthy. Good morning. I don't have Mr. Helms. Hopefully I'm here, Judge. I see my picture. My list of participants is too big and I'm not good at this. I had the same problem. I was missing Judge Wollman for a while. Ah, there we are. You did something to come on my board. We still need Mr. McCarthy, though. I think his camera is not on. I'm showing. McCarthy, you're up. Hey, please support Mr. Helms. My name is Vincent McCarthy. I represent the appellant Spire Missouri Inc. Energy Insurance Mutual Limited and Associated Electric and Gas Insurance Services. Spire Missouri is the successor in interest to the Missouri Gas Energy Division of Southern Union Company. So I'll be referring to the appellants generally as Spire or as Missouri Gas Energy. Spire asked this court to reverse the district court's ruling and enforce a contract between two sophisticated parties according to the plain and ordinary meaning of the words contained in that contract. The district court erred in failing to enforce the contract according to the plain and ordinary meaning of the contract's terms, and the district court further erred in finding that the contract for utility locating services between MGE and USIC was a contract for construction under Missouri's construction anti-indemnity statute. The court also erred in finding as a matter of law that USIC was prejudiced after it failed to accept MGE's tender in accordance with the terms of the contract. Now, this contract that was entered into between USIC and MGE was to have USIC provide locating and marking services for underground utilities owned by Missouri Gas Energy to comply with Missouri Gas Energy's obligations under the Missouri One Call Act. In February of 2013, there was an explosion that occurred after a contractor struck and hit MGE's gas line and gas migrated into JJ's restaurant and subsequently exploded. That incident resulted in a series of lawsuits, I believe there were a few more than 20, and they involved claims for property damage, personal injury, and one wrongful death. Now, one thing that's important to keep in mind is that in those cases, both MGE and USIC were named as defendants. The damages that the plaintiffs sought in those cases against both Missouri Gas Energy and USIC were identical. There were the personal injury damages, there were the wrongful death damages of Ms. Kramer's family, and the property damage sustained by JJ's and other property owners nearby. Now, if we go to the contract that is involved in this particular case, there is a broad indemnification provision. It provides, and it is fully supported by Missouri law, indemnity for any and all claims, demands, damages, losses, liabilities, suits, and causes of action of every kind arising or alleged to arise out of the negligent acts, errors or omissions, violation of statute, or intentional misconduct of contractor, which would be USIC, its employees, agents, or subcontractors. This contract, there is no dispute, was one that was entered between two sophisticated entities. USIC is the, if not one of the largest locating companies. Well, counsel, you kind of slide over. Sure, cutting it all is broad, but the limitation at the end that you read is to the specific party. Your Honor, what that provision is... ...reigns in, so to speak, any and all in this context. Well, I don't think it does because if you look at... Well, obviously not, but you've overstated it when you just say any and all and we're done. Well, we're saying any and all damages and claims that relate to either actual or alleged negligence, errors, or omissions of USIC. And all of the damages that were claimed in the underlying lawsuits fall squarely within that condition. And this is very similar to the analysis that the Eighth Circuit applied in the Federal Insurance Company v. Great American Insurance Company case, where the indemnification provision was to cover fraud, which was not really involved in that case, and gross negligence allegations on the part of any employees of the management company for an apartment complex. The court in that case found that once the condition was met, in other words, a showing of gross negligence, which the court found after reviewing the undisputed facts, was met as an uncontroverted fact and a conclusion of law. They found that once you found that condition was met, that the indemnification provision would cover all claims that related to that claim for gross negligence. In that particular case, the party... Spire and USIC. And that you have taken an all-or-nothing approach that even if Spire's negligence is not indemnified, and MGE... But you want indemnification for the negligence of third parties, right? Like the company that broke the gas pipe. Yes, Your Honor, we do, but it is not... And Your Honor, as a litigation position, you were unwilling to take anything less than that. Well, we believe we're entitled to that, but we did not characterize it as any or all proposition. But you're talking about all claims against... include Spire and USIC negligence, or no, the damages resulted... You're talking about claims against Spire, but what you really want is indemnification for the liability of third parties. That's correct, Your Honor, but as the provision was applied in the Great American case, once the condition was met that gross negligence was established, it didn't matter how the underlying plaintiffs characterized their claim. The court found that even claims characterized by the underlying plaintiffs as simple negligence were covered because the condition of gross negligence was established, and any or all claims flowing from that gross negligence were covered by the indemnity provision when you were dealing with sophisticated parties, which you were in that case and which you are in this case. Counsel, walk me through the application of the statute here, and I'm going to ask you specifically, what negligent acts, errors, or omissions, violation of statute, or intentional misconduct of USIC were connected with any of the liabilities, awards, or judgments of Spire? What were the acts? I can't figure that out. Well, with respect to the settlements, we paid for the damages, and it's the tie to the damages that connects us all up. But that's not what the provision says. The provision says it has to arise out of the negligent acts, errors, or omissions, violation of statute, or intentional misconduct of USIC. So I'm pressing you and asking, what act of USIC led to the liabilities, awards, or judgments? Well, as pled in the underlying cases, the act that USIC was accused of, which constituted negligence, and we say it constituted an error or omission as well, is that there were two different utilities located in this area where the line hit. There were two electrical lines, and then there was an MGE gas line. USIC marked the presence of one gas line and one electric line, and as a consequence, the contractor that was doing the excavation thought when they located two utilities that they had identified what had been marked as one gas line and one electric line, when in reality, they had uncovered only two electrical lines and not the MGE gas line, which they ultimately struck. So the argument here is that if I'm understanding, because I thought that they had misidentified the electric line, but you're telling me that USIC had misidentified the gas line. They did not identify it for the contractor. No, Your Honor, I'm not sure we're communicating. The contractor that hit the gas line used the marks on the surface, and they believed that they had located, once they started digging in that area to expose the lines, when they exposed two utilities, they thought they had exposed what USIC had marked on the surface, a gas line and one electrical line, when in reality, they had only exposed two electrical lines. This sounds like this arose out of the acts of that contractor, not out of USIC. I'm not seeing an act by USIC that's connected with the liabilities of awards or judgments. Well, the fact that they did not identify what they were hired to identify, and that was all the utilities under the ground. And we also there is evidence that the entity that struck the gas line, that had there been two red marks on the surface, along with the one yellow mark, that they would have continued looking for the gas line because they knew that they had not found what was thought to be underneath the surface there. Okay. I see that we're already into my rebuttal time, so I'd like to reserve the rest for rebuttal. Mr. Helms. Very good. May it please the court, counsel, and the fine lawyers listening on the phone who helped me and do their best to make me look good. The district court correctly rejected Spire's attempt to make a locating company an insurer of a gas company. The district court's ruling is supported by multiple independent bases, and each is a ground for requiring affirmance. Accordingly, Spire's got the difficult job of establishing that an experienced court erred in not just one, but multiple ways. The district court did not. Spire's constant claim has been that the indemnity provision requires USIC to indemnify Spire for not just USIC's conduct, but also Spire's conduct and the conduct of third parties. In the case below, Spire asked the district court to rewrite the contract in order to save it. But on appeal, Spire is now asking this court to rewrite its pleadings, the summary judgment briefing, and history as well. The fact of the matter is that while they attacked the court for somehow having made a finding of fault, no finding of fault was ever requested or necessary. Spire focused on an all-or-nothing approach during the J.J. State court litigation, in its negotiations with USIC, and throughout the district court litigation. The district court repeatedly noted that Spire had framed its case as an all-or-nothing approach, and Spire's briefing bears that out. Spire's summary judgment briefing asserted that once indemnity is triggered, it applies to any and all claims, and USIC cannot demand that losses be apportioned. That's Joint Appendix 1327. Spire continued on to admit plaintiffs have not attempted to segregate their indemnified losses, nor would that even be possible. That's Spire's words, Joint Appendix 1368. And Spire's right. It is impossible now. It's impossible, and it's Spire's fault, because one, Spire did not involve USIC in any of the negotiations of settlements, provided at no proper notice, and it's Spire's fault because of how it proceeded before the district court. Depositions were taken, all experts were disclosed, and discovery closed by the agreement of the parties. Yet no evidence whatsoever was ever provided so as to apportion what amounts were paid in fees, costs, and settlements at that time that were attributable to USIC. What we do know is that their corporate designee admitted that they incurred no fees or defense costs related to USIC's conduct. We also know that Spire repeatedly declined to present any evidence as to apportionment, and all you need to do is look at the statements of undisputed material fact to bear that out. In both their motion for summary judgment and in response to our motion for summary judgment, you see the following statement, undisputed statement of material fact advanced by USIC. Plaintiffs, this is paragraph 57 in the joint appendix 1363, and the same appears at paragraph 41, joint appendix 1438 and 1439. Plaintiffs have not requested, either in their petition or otherwise in the litigation, indemnification that is limited to the damages attributable to USIC's conduct alone, nor have plaintiffs offered any evidence related to the amount of such damages. Plaintiff's response, undisputed but irrelevant. That ends this inquiry about whether or not there's any need or somehow the district court needed to make a finding of fault. The fact of the matter is that Spire's consistent interpretation, if this provision really says what Spire wants it to say, then it's squarely within the Missouri's anti-indemnity statute. No findings of fault are necessary. If the clause says it, then the law brings it within its ambit. And according to Missouri's anti-indemnity statute, irrespective of its application to any particular circumstances, if the agreement says what they say it says, then it is, quote unquote, wholly unenforceable under the law. And that's a problem for Spire because Missouri's anti-indemnity statute would apply. The statute contains a broad, far-reaching definition of construction work. When you look at how it defines construction work, it says it shall include but not be limited to. And then it's got a laundry list of items. The courts have repeatedly recognized that when you say include but not be limited to, it means it's giving a representative, non-exhaustive list. But it's got kind of three sections, all of which apply. The first one is the construction alteration, maintenance, or repair of any building structure, highway, bridge, viaduct, or pipeline. In that section, maintenance of any pipeline clearly applies here. The Missouri Supreme Court in Brawley, sitting on bonk, held that maintenance means, under its plain language, keeping something in a state of repair and efficiency. And in Brawley, there's a great analogy because in that case, there were levees and relief wells that were alongside roadways. And the court found that those levees and relief wells protected the roadways from flooding and therefore maintained the roads because it kept them in a state of repair and efficiency. The very same thing could be said of our marks on the ground. We are protecting the pipelines and thereby maintaining the pipelines from excavators and errant directional drills. The second provision within the construction work definition talks about or demolition, moving, or excavation connected therewith. Now, we are bound up by law with every act of excavation within the United States. The law mandates our services whenever excavation is to occur. To suggest that we aren't related to excavation is just absurd, frankly. The provision then goes on. It shall include the furnishing of surveying. And again, recognizing this is a non-existent, non-exhaustive representative list, our services are very akin to surveying. We take maps and prints, we use measurements, and we use sophisticated electromagnetic equipment to mark the approximate location. That's akin to surveying, no reason or basis to distinguish it. And it goes on to say design, engineering, planning, or labor materials or equipment in connection with such work. Again, our locating labor is used to assist architects and engineers in design and planning. It's used to assist excavators in determining where they're going to put lines. And that's relating to pipelines, buildings, structures, highways, bridges, viaducts, fences, pretty much anything that requires excavation. It's not a stretch that the district court found that this fell within the definition of construction work. And at that point, the clause is wholly unenforceable. Numerous courts have held that then the court will not undertake to rewrite the agreement, and specifically in the context of indemnification provisions. And that makes sense because you don't want to incentivize someone to overreach and then have an illegal contract with an escape hatch in it. Booker is one of the cases we cite on that point. That is an independent basis to affirm the district court, but there's more. Even if the statute did not apply, Spire cannot recover because the language of the agreement does not support Spire's all or nothing interpretation. Missouri law will not indemnify a party for its own conduct unless such intention is clear and unequivocal. This applies even between sophisticated parties. They suggest it doesn't, but Nussbaum, Purcell, Economy Farms, Extra Lease, all of those cases involved sophisticated parties. And as Judge Loken noted, in this particular case, as in Extra Lease, there is a very clear limiting clause. While it does say any and all claims, it ends with the limiting language, limiting the indemnification to the negligent acts, errors, or omissions, violations of statute or intentional misconduct of USIC. Multiple courts have held that that does not at all suggest a clear and unequivocal intent to embrace the conduct of the indemnity. Quite to the contrary, the Missouri Supreme Court and KCPL recognize that language like that, where you use words like negligence, errors, or omissions, violations, actually is a clear inference that even fault is required on the part of the indemnitor to trigger any obligations to the indemnity. They also try to focus on the use of the word arising or alleged to arise from. But we cited a case directly on Point Blackshare, where the court recognized that even if you say arising or alleged to arise from, that still it doesn't meet the standard of clear and unequivocal language indicating an intent to become an insurer for a gas company. Utility Services v. Noranda, that doesn't save them. That case had a very clear magic phrase in it right before the limiting language. It said including but not limited to, and then the limiting language, which essentially makes the limiting language limitless. Because then what we know is there's something more than just the indemnitor's conduct that could generate the liability. ExtraCorp recognized that and distinguished it on the very same basis that it should be distinguished here. Spire didn't carry its burden of showing clear and unequivocal intent. And if there were any ambiguities, they should be construed against them. But even the district court noted that if you look to the negotiating history, there was no intent to indemnify Spire's conduct. USIC specifically struck out language calling for USIC to indemnify Spire. And it's not plausible either that we would agree to become an insurer for a gas company. These are highly regulated entities. State and federal obligations are imposed upon them in responding to gas leak. USIC has no control over that conduct at all. And control is a factor in assessing whether or not there was an intent to indemnify. Moreover, as this case amply illustrates, there's very high exposure at issue here. To sign on to insure gas companies for every time that lines are marked is not plausible. And that brings into another factor, which is the huge public interest, as this case also demonstrates. Massive amounts of property damage, people injured, and a woman died. There's a huge public interest in a gas company's response to gas leaks. All of these factors establish that they did not show a clear and unequivocal intention to become an insurer of Spire. That's another independent basis to affirm the district court. But it also leads into yet another independent basis, although the district court found it didn't need to reach this issue. But that is that the agreement would be illegal if it does what Spire says it does. Missouri law is clear. One may never exonerate oneself for future liability for actions involving the public interest. It's hard to imagine of a stronger public interest than insuring that gas companies don't turn restaurants into bombs that kill and maim people. In addition to that, you can't indemnify for punitive damages. And Spire's corporate designee and Spire's expert agreed that the payments were made in part based upon concerns regarding Spire's own conduct and the risk of punitive damages being imposed against Spire. These also are independent bases supporting affirmance. And finally, your honors, even if you ignore everything I've said over the past 11 and a half minutes, there is yet another basis by which the district court still must be affirmed due to prejudice. And that's because Missouri law imposes strict standards on indemnities. Any acts on the part of an indemnity which materially increase the risk or prejudice the rights of the indemnitor will discharge the indemnitor. District Court recognized that was Missouri law, and frankly, it's also recognized in the Eighth Circuit. City of Grandview talks about how an indemnity must act reasonably under all circumstances. The undisputed facts here show, as the district court noted, that Spire violated its obligations as an indemnity. It settled cases before ever even asking for indemnity. It had only asked for a defense cost, and then we learned that they had settled cases before that. And in fact, their own corporate designee, as a statement of undisputed material fact, paragraph 30, joint appendix 1430, the statement of this inspires corporate representative and general counsel to testify if he was not aware of any instance where MGE notified USIC or initiated any discussion with USIC before making any of those settlements. Plaintiff's response, undisputed. That's paragraph 30, joint appendix 1430. In addition to that, we know that they refused to provide USIC with information during the settlement process, and we also know that, for the most part, they did not obtain any releases for USIC despite paying massive amounts to settle these claims. A burn rate of 30 to 1 versus the few cases that USIC did enter into settlements dealing with, and far beyond the measure of damages claimed by the plaintiffs as far as hard economic costs. In addition, and this one's perhaps my favorite, they paid experts in the state court litigation to offer opinions adverse to USIC. USIC then paid me to cross-examine these experts to protect USIC's interests in the underlying litigation. Now, in this case, they want USIC to pay them for having hired adverse experts against us. And that's, again, an undisputed fact. It's paragraph 35 within our undisputed material facts, joint appendix 1436, is the reference. Each and all of these acts that are undisputed by SPIRE increased the risk to USIC and prejudiced its rights. Each and all of these acts under Missouri law required discharge of any indemnity obligations under any circumstances. And this is yet another one of these several reasons why the district court should be afraid. Thank you. Thank you, Mr. Helms. Mr. McCarthy, you have some time for a vote. Yes. Your Honor. Yes. With respect to the scope of the indemnity indemnification, if you look at paragraph 12.3 of the contract, it talks about the consequences of USIC's failure to accept a tender. And in that particular circumstance, it deems as fully conclusive the amounts that MGE or SPIRE pays to settle and defend the underlying cases. That provision by itself indicates that USIC was fully intending to cover all the damages that were alleged or did arise from USIC's negligence, which includes all of the wrongful death claims, the personal injury claims and the property damage claims. In this instance, MGE is not asking this court to find that USIC is MGE's insurer. MGE and SPIRE are seeking to enforce the contract according to the plain and ordinary meaning of the words in the contract. Now, with respect to the construction anti-indentity statute, that does not apply here because the contract between USIC and MGE was not one for construction work. USIC was not building anything, not constructing anything, not amending. Council, the statute doesn't say that in sub three. It broadly defines what the reference to construction means. It doesn't just say it has to be a contract to dig a ditch or build a building. Well, it does have to be for construction, alteration, maintenance or repair of a building, structure, highway, bridge, viaduct or pipeline. Or the contract has to be one for moving or excavation connected therewith. And the contract between MGE and USIC simply is not one for excavation. It is not one for surveying. As a matter of common sense, for me at least, Council, the on-call aspect of this relationship means it has to be viewed as construction. Excavation is construction. And they're required to provide these services when excavation is going to take place. I don't care who they, you know, the contracting parties to me doesn't make that much difference. The distinction is not whether USIC, Heartland Midwest or Time Warner were engaged in construction. The question is whether the contract between USIC and MGE was one for construction work. And USIC was not building or constructing. That's your interpretation. Well, there is no consideration paid by the owner of the project toward MGE or USIC as part of that construction project. There is no one paying MGE or USIC for surveying work. Council, we're talking about statutory construction of a Missouri statute. What's your best Supreme Court of Missouri statutory construction case? Well, the Weibel case, which indicates that you need to have a transactional connection in order to be in connection with. But there are no cases that are construing the construction ante indemnification statute. So we have to look outside. And we have cited cases, the Weibel one, the primary one that shows that you have to have a nexus that does not exist. When this contract between USIC and MGE was entered, the construction project that involved the installation of cable to the new Plaza Vista building was not even under contemplation. It was going to happen in the future. This is simply a contract where USIC has second thoughts about its obligations under the contract. And for that and all the reasons we state, we request that the court reverse the judgment of the district court and remain for further proceedings consistent with the court's interpretation of the contract. Thank you, Council. Once again, we have a complex case that's been very, very effectively argued and argument has been helpful and we will take it under advisement. Thank you, Your Honors.